REVISED SEPTEMBER 27, 2002

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 01-60582
_____

GULF GUARANTY LIFE INSURANCE COMPANY

Plaintiff - Appellant

v.

CONNECTICUT GENERAL LIFE INSURANCE COMPANY; CIGNA
REINSURANCE COMPANY

Defendants - Appellees

_____

Appeal from the United States District Court
for the Southern District of Mississippi

_____

August 30, 2002

Before KING, Chief Judge, and PARKER, Circuit Judge, and ELLISON,
District Judge.[*]

KING, Chief Judge:

Plaintiff-Appellant Gulf Guaranty Life Insurance Company

filed an initial claim in the district court in 1996 alleging

that Defendant-Appellee Connecticut General Life Insurance

---

[*] District Judge of the Southern District of Texas,
sitting by designation.

Company breached a reinsurance contract between them. Gulf Guaranty subsequently filed claims in the district court in 2000 alleging that Connecticut General breached an agreement to arbitrate the reinsurance dispute, as well as claims for conspiracy and malice allegedly committed by Connecticut General with respect to Connecticut General's conduct in the arbitration process. The district court consolidated the 1996 and 2000 actions and compelled arbitration of the consolidated action. The district court further denied a motion by Gulf Guaranty to re-open discovery and granted a motion by Connecticut General to remove a chosen arbitrator, Gary Fagg, from service. For the following reasons, we AFFIRM the district court's order compelling arbitration of all disputes between Gulf Guaranty and Connecticut General in the consolidated action; we AFFIRM the district court's decision dismissing Gulf Guaranty's claims for breach of the arbitration agreement and for conspiracy and malice; we AFFIRM the district court's decision denying Gulf Guaranty's motion to re-open discovery; but we REVERSE the district court's decision granting the motion to strike Fagg from service as an arbitrator.

## I. FACTUAL AND PROCEDURAL HISTORY

In 1981, Plaintiff-Appellant Gulf Guaranty Life Insurance Company ("Gulf Guaranty") entered into a contract with Defendant-Appellee Connecticut General Life Insurance Company ("Connecticut

2

General") by which Connecticut General agreed to reinsure Gulf Guaranty on certain credit life insurance certificates issued by Gulf Guaranty. Their reinsurance contract contained an arbitration provision governing disputes under the contract.[1] In 1991, a third-party holder of one of the insurance certificates sued Gulf Guaranty for payment. Following judgment in favor of that certificate holder, Gulf Guaranty sought reimbursement from Connecticut General pursuant to their reinsurance contract. Connecticut General offered Gulf Guaranty payment in an amount that Gulf Guaranty found unsatisfactory. On or about September 17, 1996, Gulf Guaranty sued Connecticut General and Defendant-Appellee Cigna Reinsurance Company ("Cigna")[2] (collectively, "the Defendants") in Mississippi state court for breach of contract and "wrongfully placing conditions on payment." This was the 1996 first-filed suit.

---

[1] The arbitration provision in the Gulf Guaranty-Connecticut General reinsurance contract reads in relevant part:

> Should a disagreement arise between the two companies regarding the rights or liabilities of either company under any transaction under this agreement, the same will be referred to arbitrators, one to be chosen by each company from among the officers of other life insurance companies and a third to be chosen by the said two arbitrators before entering upon arbitration. The arbitrators will regard this document as an honorable agreement and not merely as a legal obligation, and their decision will be final and binding upon both companies.

[2] Cigna was a non-signatory to the arbitration agreement between Gulf Guaranty and Connecticut General that acted as Connecticut General's agent.

3

The 1996 first-filed suit was removed to federal court in October of 1996. Connecticut General and Cigna sought to compel arbitration pursuant to the Connecticut General-Gulf Guaranty reinsurance contract. In January of 1997, a magistrate judge stayed all proceedings in the 1996 first-filed suit against Connecticut General and compelled arbitration of the reinsurance dispute. In April of 1997, the district court likewise stayed the action against non-signatory Cigna pending arbitration.

In September of 1999, Gulf Guaranty appointed Gary Fagg as its arbitrator of choice. In January of 2000, the Defendants appointed Oscar R. Scofield as their arbitrator of choice. It is undisputed that Scofield and Fagg discussed selection of Peter Jaynes to serve as the third arbitrator. Whether the two arbitrators agreed upon and appointed Jaynes as the third arbitrator, or whether his selection was merely discussed between them, is a matter of dispute.[3] Based on this dispute over selection of arbitrators, on August 23, 2000, Gulf Guaranty filed a second lawsuit in Mississippi state court that alleged breach of the arbitration agreement by the Defendants, alleged waiver of the Defendants' right to arbitrate, and alleged conspiracy and

---

[3] Gulf Guaranty contends that Scofield and Fagg agreed on Jaynes's selection and in fact appointed Jaynes to serve. Scofield, Connecticut General's chosen arbitrator, counters that Jaynes's appointment as the third arbitrator was merely discussed between Scofield and Fagg, but that those two arbitrators never agreed upon, nor appointed, Jaynes to serve.

4

malice and reckless disregard for Gulf Guaranty's rights. This was the 2000 second-filed suit.

The 2000 second-filed suit was likewise removed to federal court. On December 14, 2000, the district court re-opened the 1996 first-filed suit and consolidated it with the 2000 second-filed suit. On June 22, 2001, upon motion by the Defendants to compel arbitration and to dismiss the 2000 second-filed suit, the district court issued an order finding that the Defendants had not waived their right to arbitrate. In that June 22 order, the court also granted the Defendants' motion to compel arbitration and granted the Defendants motion to "Dismiss the lawsuit filed by Plaintiff Gulf Guaranty on August 23, 2000," making no mention of the status of the 1996 first-filed suit component of the underlying consolidated action as stayed or dismissed. In the same June 22 order, the district court further denied Gulf Guaranty's motion to re-open discovery and granted the Defendants' motion to strike Fagg from service as an arbitrator.

On July 26, 2001, the district court stayed enforcement of its June 22 order compelling arbitration pending appeal of that order to this court. On September 18, 2001, the district court denied a motion by Gulf Guaranty for relief from the district court's judgment pursuant to FED. R. CIV. P. 60(b). Gulf Guaranty now timely appeals the district court's order of June 22, 2001 that compelled arbitration and dismissed Gulf Guaranty's

5

claims for waiver, breach and conspiracy; denied Gulf Guaranty's motion to re-open discovery; and struck arbitrator Fagg.

## II.  THE ORDER COMPELLING ARBITRATION

### A.  This Court's Jurisdiction Over Appeal of the District Court's June 22 Order Compelling Arbitration

The parties agree that this court should have jurisdiction over the district court's June 22 order compelling arbitration of the consolidated action, but such agreement is insufficient to confer jurisdiction on this court.  Due to procedural ambiguity within the June 22 arbitration regarding the precise status of the 1996 first-filed suit of the consolidated action as stayed or dismissed, there is some question as to whether this court has jurisdiction subsequent to the Supreme Court's decision in Green Tree Fin. Corp. - Ala. v. Randolph, 531 U.S. 79 (2000).  In Green Tree, the Supreme Court addressed the appealability of orders compelling arbitration under the Federal Arbitration Act, 9 U.S.C. § 16(a)(3) (1999) ("the FAA").[4]  The Supreme Court held in Green Tree that, when a district court issues an order compelling arbitration, that order is appealable as a final decision under section 16(a)(3) only if the district court dismisses the underlying action.  See 531 U.S. at 86-87.  The court further held in Green Tree that when a district court

_____

[4]  Section 16(a)(3) of the FAA states in relevant part: "(a) An appeal may be taken from -- ... (3) a final decision with respect to an arbitration that is subject to this title."  9 U.S.C. § 16(a)(3).

6

compels arbitration but "enter[s] a stay instead of a dismissal [ of the underlying action,] ... that order would not be appealable" under the FAA. Id. at 87 n.2 (citing 9 U.S.C. § 16(b)(1) (1999)).[5]

It is undisputed that the district court's June 22 order explicitly dismissed the underlying 2000 second-filed suit that was filed on August 23, 2000. However, because the district court neglected to explicitly address the status of the 1996 first-filed suit, which 1996 suit that court acknowledged it had re-opened for the purpose of consolidating the 1996 suit with the 2000 second-filed suit, this court must determine, pursuant to the dictates of Green Tree, whether we can hear this appeal of the June 22 order compelling arbitration. Because we conclude that the record shows clear intent by the district court that its June 22 order compelling arbitration be immediately appealable to this court pursuant to the Supreme Court's mandate in Green Tree, we further conclude that we have jurisdiction to hear appeal of that order under § 16(a)(3) of the FAA, and in accordance with Green Tree.

The Supreme Court's decision in Green Tree did not confront the circumstance of consolidated actions. Subsequent to that decision, no other court of appeals has yet confronted the

---

[5] Section 16(b)(1) of the FAA states: "Except as otherwise provided in section 1292(b) of title 28, an appeal may not be taken from an interlocutory order -- granting a stay of any action under section 3 of this title ...." 9 U.S.C. § 16(b)(1).

precise circumstance of this case of determining appellate jurisdiction over an order compelling arbitration of a consolidated action that explicitly dismissed only a portion of the claims in that action and neglected to declare the status of the remaining claims as stayed or dismissed. The Supreme Court noted in Green Tree that Congress did not define the term "final decision" as it is used within the FAA. See 531 U.S. at 86. The court thus held that the term final decision should be "accord[ed] its well established meaning [,]" as "a decision that ends the litigation on the merits and leaves nothing more for the court to do but execute the judgment." Id. (citations and quotation omitted).

We recently construed a district court's order compelling arbitration that did not precisely conform with the dismissal language of Green Tree as providing the functional equivalent of the required dismissal of the underlying case, and thus to allow for our exercise of jurisdiction over that appeal in accordance with Green Tree. See Am. Heritage Life Ins. Co. v. Orr, 294 F.3d 702, 706-08 (5th Cir. 2002) (citing Green Tree, 531 U.S. at 89). In the order compelling arbitration at issue in that case, the district court used the term "clos[ed]" rather than "dismiss[ed]" to indicate the status of the underlying case. See id. We concluded that there "is no practical distinction between 'dismiss' and 'close' for purposes of this appeal," where "the application of each word results in a termination on the merits,

8

leaving the judgement-rendering [sic] court with nothing more to do but execute the judgment" so that we determined "the decision [to be] 'final' within the contemplation of § 16(a)(3) of the FAA." Id. Thus, we have previously inferred that an order that did not precisely conform with the Supreme Court's requirement in Green Tree that claims be dismissed per se to allow appellate jurisdiction nonetheless constituted a final decision for the purposes of our jurisdiction in conformance with Green Tree.

The district court in the instant case took the following actions that suggest that court's intent to issue a final decision in its June 22 order compelling arbitration that would be immediately appealable to this court, in full accord with Green Tree. We note first that the district court lifted the stay on the 1996 first-filed suit by re-opening that case when it consolidated the actions, so that no stay of the first-filed suit remained in effect. We further note that there was no motion before the district court by any party to stay any portion of the consolidated action at the time that court issued its June 22 order compelling arbitration of the entire consolidated action. Rather, there was only a motion to dismiss filed by the Defendants along with the Defendants' motion requesting the district court to re-compel the parties to arbitrate their entire

dispute.[6]  In its June 22 order compelling arbitration, the district court did dismiss the 2000 second-filed suit in order to compel the entire action to arbitration in accord with the previous order compelling arbitration of the 1996 first-filed suit.

Additionally, in its subsequent order of July 26, 2001, the district court stayed enforcement of its June 22 order compelling arbitration pending appeal to this court of that June 22 order, referencing the cause numbers of both the 1996 and 2000 filed suits in that July 26 stay order.  Moreover, in that July 26 order, the district court expressly referenced its June 22 order compelling arbitration and described that order as follows: "This [June 22] Order is considered a final judgment for the purposes of appeal.  See 9 U.S.C. § 16(a)(3); Green Tree Fin. Corp. v. Randolph, 531 U.S. 79 (2000)."  The district court's express reference to Green Tree when describing its June 22 order is very compelling evidence that the district court clearly intended to issue a final decision compelling arbitration in its June 22 order for the purposes of this court's jurisdiction to entertain immediate appeal of that order fully in accord with Green Tree.

Last, the district court subsequently entertained and denied a motion made by Gulf Guaranty pursuant to FED. R. CIV. P. 60(b)

---

    [6]  We acknowledge that this motion by the Defendants seeking an order re-compelling arbitration of the entire dispute only requested dismissal of the 2000 second-filed suit.

10

for relief from the district court's judgment of June 22.  We note that trial courts have no jurisdiction to entertain Rule 60(b) motions for relief from a judgment except from an order that is a "final judgment, order, or proceeding ...."  FED. R. CIV. P. 60(b).[7]  Thus, the district court's acceptance of jurisdiction over, and denial of, Gulf Guaranty's Rule 60(b) motion further evinces that court's belief that its June 22 order constituted a final decision immediately appealable to this court.  We conclude from this record that the district court's order of June 22 compelling arbitration of the entire instant consolidated action constitutes a final decision within the meaning of <u>Green Tree</u>, 531 U.S. at 85.  The district court's failure to reference explicitly the 1996 first-filed suit as dismissed in the court's June 22 order compelling arbitration of the entire consolidated action was simply an oversight.  Clearly, the intention, as well as the effect, was to dismiss it.

**B.  No Waiver By Connecticut General of Its Right to Arbitrate**

In the 2000 second-filed suit, Gulf Guaranty claimed that Connecticut General waived its right to arbitrate based on Connecticut General's alleged attempted veto of the selection of Jaynes as a third arbitrator by Scofield and Fagg.  Based on this dispute over arbitrator selection, Gulf Guaranty alleged that

---

[7]  Rule 60(b) states in relevant part:  "On motion ... the court may relieve a party ... from a final judgment, order, or proceeding for the following reasons: (1) mistake ...."  FED. R. CIV. P. 60(b).

11

Connecticut General refused to move forward with arbitration, took active steps to prevent arbitration, and attempted to "counsel or coerce" Scofield into repudiating an agreement that Gulf Guaranty alleges was completed between Scofield and Fagg and appointed Jaynes as the third arbitrator. The district court granted the Defendants' motion to dismiss the waiver claim. We agree with the district court that, even taking Gulf Guaranty's allegations as true at the motion to dismiss stage, such allegations regarding Connecticut General's participation in the dispute over the composition of the arbitration panel do not indicate sufficient overt acts evincing a desire by Connecticut General to litigate, instead of arbitrate, the reinsurance dispute that would constitute waiver of Connecticut General's contractual right to arbitrate.

This court reviews de novo a district court's dismissal of a claim that a party waived its right to arbitrate. See <u>Subway Equip. Leasing Corp. v. Forte</u>, 169 F.3d 324, 326 (5th Cir. 1999) (waiver); <u>Copeland v. Wasserstein, Perella & Co., Inc.</u>, 278 F.3d 472, 477 (5th Cir. 2002) (motion to dismiss). As the district court correctly set forth, a party claiming that another party waived the contractual right to arbitrate bears a heavy burden to establish the claim. "There is a strong presumption against" a finding that a party waived its contractual right to arbitrate, and "any doubts thereabout must be resolved in favor of arbitration." <u>Texaco Exploration & Prod. Co. v. AmClyde</u>

12

Engineered Prods. Co., Inc., 243 F.3d 906, 911 (5th Cir. 2001) (citing Subway, 169 F.3d at 329).  Ordinarily a party waives its right to arbitrate when it "initially pursues litigation and then reverses course and attempts to arbitrate ...."  Id.  However, waiver "can also result from 'some overt act in Court that evinces a desire to resolve the arbitrable dispute through litigation rather than arbitration.'"  Id. (quoting Subway, 169 F.3d at 329).

However, "mere delay falls far short of the waiver requirements ...."  Id. (citing Subway, 169 F.3d at 326).  In Subway, for example, this court rejected a claim of waiver even where it was alleged a party sought related judicial bankruptcy proceedings involving issues separate from the arbitration in an affirmative attempt to delay that arbitration.  See 169 F.3d at 329.  Similarly, in Texaco Exploration, this court rejected a claim of waiver based on a party's seeking litigation of another dispute with the same opposing party that was separate from the arbitrable dispute, even where this court recognized that the unrelated litigation had the effect of delaying the arbitration and narrowing its scope.  243 F.3d at 911-12.  This court has further recognized that, even where a party takes substantial steps toward litigation of the arbitral dispute, or participates substantially in litigation procedures, it ordinarily will not waive the right to arbitrate.  See Tenneco Resins, Inc. v. Davy Int'l, AG, 770 F.2d 416, 420-21 (5th Cir. 1985) (collecting

13

cases).  In Tenneco, for example, this court found that a party had not waived its right to arbitrate when it waited "almost eight months before moving that the district court proceedings be stayed pending arbitration, and in the meantime participated in discovery."  Id.  This court noted that "this and other courts have allowed such actions as well as considerably more activity without finding that a party has waived a contractual right to arbitrate."  Id. at 421 (citing Southwest Indus. Import & Export, Inc. v. Wilmod Co., Inc., 524 F.2d 468 (5th Cir. 1975)); see also Gen. Guar. Ins. Co. v. New Orleans Gen. Agency Inc., 427 F.2d 924, 928-29 (5th Cir. 1970) (finding no waiver although a party filed an answer to a court claim denying liability and filed counterclaims, as well as attempted to implead parties and allowed taking of two depositions before demanding arbitration).

In contrast, in one of the few cases in which we have recognized a party's waiver of the right to arbitrate, we found that the party had "demonstrated a clear and unmistakable 'disinclination' to arbitrate" to "substantial detriment and prejudice" of the other party, including the bringing of a state court suit that did not "rely on or even mention the arbitration clause," and where the parties did not attempt to schedule an arbitration hearing until almost three years later.  See Miller Brewing Co. v. Fort Worth Distrib. Co., Inc., 781 F.2d 494, 497 (5th Cir. 1986); cf. Ernst, Inc. v. Manhattan Constr. Co. of Tex., 559 F.2d 268, 269 (5th Cir. 1977) (finding that "extensive

14

postsuit [sic] actions in all phases of this complex litigation served as waiver of [a party's] right to demand" that an opposing party arbitrate grievances).  Connecticut General did not initiate any litigation action in this case; it merely defended itself against Gulf Guaranty's court claims.  Gulf Guaranty offers no authority supporting its proposition that, even taking its allegations as true, Connecticut General's participation in the dispute over the composition of the arbitration panel -- even if protracted and deliberately causing delay in arbitration -- rises to the level of the type of overt act that would indicate Connecticut General's desire to resolve the underlying reinsurance dispute via litigation rather than arbitration for the purposes of waiver.  We find no such authority either.  We thus agree with the district court that Connecticut General did not waive its right to arbitrate its dispute with Gulf Guaranty.

### III.  DISMISSAL OF GULF GUARANTY'S CLAIMS FOR BREACH OF THE ARBITRATION AGREEMENT AND CONSPIRACY AND DENIAL OF GULF GUARANTY'S MOTION TO REOPEN DISCOVERY

### A.  Dismissal of Gulf Guaranty's Remaining Claims for Damages for Breach of the Arbitration Agreement, Conspiracy, and a Tort of Malicious, Willful, or Reckless Disregard for Gulf Guaranty's Rights

We review a district court's grant of a motion to dismiss claims de novo.  See Copeland, 278 F.3d at 477.  In Gulf Guaranty's August 23, 2000 complaint alleging that Connecticut General "refused to move forward with arbitration" based on the dispute over selection of Jaynes as a third neutral arbitrator,

15

Gulf Guaranty claimed that Connecticut General breached the arbitration agreement, conspired to deprive Gulf Guaranty of its rights under the reinsurance agreement, and committed malicious, willful, or reckless disregard for Gulf Guaranty's rights, which latter claim Gulf Guaranty indicated constituted an "independent tort." Gulf Guaranty sought actual damages, attorneys' fees and costs, as well as "punitive damages in an amount sufficient to punish these defendants and to deter others from similar misconduct ...." In its June 22 order, once the district court found that Connecticut General did not waive its right to arbitrate and compelled arbitration, that court granted the Defendants' motion to dismiss the entire lawsuit filed on August 23, thus including Gulf Guaranty's claims for breach, conspiracy and malice. The court did so without any further reference by the court to those claims or discussion of their merits.

The dismissal without discussion suggests that the district court declined to reach the merits of those claims. Gulf Guaranty argues that this was an improper dismissal of the claims on the merits and further contends that, even if its pleaded allegations failed to make out its claim of waiver, Gulf Guaranty's allegations of breach and conspiracy and malice, if taken as true, are nevertheless sufficient to survive a motion to dismiss. The Defendants contend that the district court properly dismissed these three claims on their merits and posit that the district court must have done so based on a conclusion by that

16

court that such claims were merely reiterative of Gulf Guaranty's failed waiver claim.

We disagree with the parties' assumption that the district court dismissed Gulf Guaranty's claims for damages for breach, conspiracy and reckless and malicious behavior on the merits. We acknowledge that it is not entirely clear from the June 22 order upon which ground the district court based its dismissal of those two claims -- whether on the merits or without reaching the merits. However, we are "not restricted to ruling on the district court's reasoning, and may affirm a district court's grant of a motion to dismiss on a basis not mentioned in the district court's opinion." See In re Comshare, Inc. Sec. Litig., 183 F.3d 542, 548 (6th Cir. 1999) (citation omitted); see also Razzoli v. Fed. Bureau of Prisons, 230 F.3d 371, 376 (D.C. Cir. 2000) (explaining that an appellate court "can affirm a correct decision even if on different grounds than those assigned in the decision under review")(internal quotation and citation omitted). Consequently, because we conclude that it was proper for the district court, when compelling arbitration, to dismiss Gulf Guaranty's breach, conspiracy and malice claims without reaching the merits of those claims, we affirm the order dismissing those claims.

Gulf Guaranty offers no basis for a court's jurisdiction to adjudicate claims for damages of the type made by Gulf Guaranty that arise from the alleged failure or breach of the agreed upon

17

arbitral process with respect to selection of Jaynes as arbitrator, and we find none.  No court appears to have addressed the precise instant circumstance in which a party alleges failure of the arbitral process and seeks damages, rather than compelled arbitration, from the court for breach of a valid arbitration agreement, as well as damages for conspiracy and tort.  However, review of the applicable principles regarding a court's limited authority to intervene in the arbitral process when there is a valid and enforceable arbitration agreement indicates that it was proper for the district court to dismiss Gulf Guaranty's breach, conspiracy, and malice claims without addressing the merits of those claims.

Under the FAA, jurisdiction by the courts to intervene into the arbitral process prior to issuance of an award is very limited.  See Larry's United Super, Inc. v. Werries, 253 F.3d 1083, 1085 (8th Cir. 2001).  Courts are limited to determinations regarding whether a valid agreement to arbitrate exists and the scope and enforcement of the agreement, including the arbitrability of given underlying disputes under the agreement. See id. at 1085-86 ("'[A] court compelling arbitration should decide only such issues as are essential to defining the nature of the forum in which a dispute will be decided.'") (quoting Great Western Mtg. Corp. v. Peacock, 110 F.3d 222, 230 (3d Cir. 1997)); Republic of Nicaragua v. Standard Fruit Co., 937 F.2d

18

469, 478 (9th Cir. 1991) ("Our role is strictly limited to determining arbitrability and enforcing agreements to arbitrate ...."). Section 4 of the FAA provides for a court's role in the arbitral process prior to issuance of an award in the event of a claimed "default" of that process pursuant to a valid agreement:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition ... [a] district court ... for an order directing that such arbitration proceed in the manner provided for in such agreement .... The court ... upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, ... shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement .... If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed ... to the trial thereof .... If the jury find that an agreement for arbitration was made in writing and that there is a default in proceeding thereunder, the court shall make an order summarily directing the parties to proceed with the arbitration in accordance with the terms thereof.

9 U.S.C. § 4 (1999). The FAA does not provide therefore for any court intervention prior to issuance of an arbitral award beyond the determination as to whether an agreement to arbitrate exists and enforcement of that agreement by compelled arbitration of claims that fall within the scope of the agreement even after the court determines some default has occurred. Moreover, enforcement of an agreement to arbitrate under the FAA does not appear to include any mechanism beyond those geared toward returning the parties to arbitration, thus appearing not to authorize compensation by a court to parties in the form of

19

damages prior to issuance of an arbitral award. Cf. Moses H. Cone Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 22 (1982) ("The [FAA] provides two parallel devices for enforcing an arbitration agreement: a stay of litigation in any case raising a dispute referable to arbitration, 9 U.S.C. § 3, and an affirmative order to engage in arbitration, § 4. Both of these sections call for an expeditious and summary hearing, with only restricted inquiry into factual issues.").

We have at least once rejected a claim for damages arising from an alleged failure in the arbitral process and ordered the parties instead to resume arbitration. See Folse v. Richard Wolf Med. Instruments Corp., 56 F.3d 603, 604-06 (5th Cir. 1995). In Folse, we found that a district court erred by refusing to compel parties to return to arbitration and refusing to stay a court action that included a claim for damages from "failure of arbitration" arising from an arbitral process that was ongoing for more than three years without resulting in an award. Id. In so doing, we noted that, although it was "unfortunate" that the arbitration "has failed the expectations of at least one, if not both, of the parties[,] ... [n]onetheless, ... these facts do not permit us to intervene until the parties see this arbitration through to a final award." Id. at 606.

Additionally, this court follows the rule by which challenges to the procedural aspects of arbitration are for the arbitrator to decide, while challenges to the substantive

20

arbitrability of disputes are for the courts to decide.  See

Smith Barney Shearson, Inc. v Boone, 47 F.3d 750, 753-54 (5th

Cir. 1995) (finding that a party's claim that arbitration was

time-barred was a proper dispute regarding arbitration procedure

for the arbitrator where rules regarding timeliness were

incorporated into the agreement to arbitrate and the parties

agreed to have any dispute between them resolved by arbitration);

Ala. Educ. Ass'n v. Ala. Prof'l Staff Org., 655 F.2d 607 (5th

Cir. Unit B Sept. 8, 1981) (citing United Steelworkers v. Am.

Mfg. Co., 363 U.S. 564 (1960)); see also Livingston v. John Wiley

& Sons, Inc., 313 F.2d 52, 62 (2d Cir. 1963) ("[I]ssues of

compliance with grievance and arbitration procedure ... are

properly within the competence of the arbitrator.").  As the

Fourth Circuit has explained, "[g]enerally, objections to the

nature of arbitral proceedings are for the arbitrator to decide

in the first instance ... [f]airness objections should generally

be made to the arbitrator subject only to limited post-

arbitration judicial review as set forth in section 10 of the

FAA."  See Hooters of Am., Inc. v. Phillips, 173 F.3d 933, 940-41

(4th Cir. 1999).    There are circumstances in which courts will

intervene in the arbitral process when a challenge goes to the

making of the agreement or suggests that the agreement is void or

warrants rescission.  In Hooters of America, for example, the

Fourth Circuit found that a party "materially breached" its

21

arbitration agreement by promulgating rules under that agreement that were so biased in favor of an employer that the rules were tantamount to unconscionability, thus requiring the extreme remedy of rescission of the agreement.  See id. [8]  We have recently similarly determined that a court may entertain a challenge to the enforcement of arbitration agreements based on a theory that the agreement is void as against public policy.  See Inv. Partners, L.P. v. Glamour Shots Licensing, Inc., No. 01-60651, 2002 WL 1498721, at *3 (5th Cir. July 15, 2002).  However, Gulf Guaranty's claims for damages arising from breach of the arbitration agreement, and from conspiracy and a tort of malice, based on its allegations regarding Connecticut General's

---

[8]  The Fourth Circuit in Hooters of America strictly limited the reach of its decision on the egregious nature of the facts of that case, cautioning:

> [O]ur decision[s] [should not] be misunderstood as permitting a full scale assault on the fairness of proceedings before the matter is submitted to arbitration .... This case ... is the exception that proves the rule: fairness objections should generally be made to the arbitrator subject only to limited post-arbitration judicial review as set forth in section 10 of the FAA.  By promulgating this system of warped rules, [employer] Hooters so skewed the process in its favor that [the employee] has been denied arbitration in any meaningful sense of the word.  To uphold the promulgation of this aberrational scheme under the heading of arbitration would undermine, not advance, the federal policy favoring alternative dispute resolution.

173 F.3d at 941.

responsibility for failure in the arbitrator selection process, make no such challenges to the making of or validity of the arbitration agreement, nor do these claims suggest that the agreement is void, unenforceable, or worthy of rescission based on public policy or any other ground. Rather, Gulf Guaranty appears improperly to attempt to cast challenges that essentially go to the procedure of arbitration, specifically the arbitrator selection process, and to the alleged unfairness of that process, as claims for damages for breach of contract and tort injury. We find no authority under the FAA for a court to entertain such challenges prior to issuance of the arbitral award.

The parties do not dispute that they have a valid agreement to arbitrate and that their underlying reinsurance dispute is arbitrable under that agreement. The district court has already provided for enforcement of the valid agreement pursuant to the mechanisms outlined in the FAA via that court's June 22 order compelling arbitration. As we indicated in <u>Folse</u>, prior to issuance of an arbitral award, a party's prayer for actual and punitive damages for any alleged failure of that process does not appear to fall within the ambit of a court's authority to <u>enforce</u> a valid arbitration agreement under the FAA. <u>See</u> 56 F.3d at 603-05. We conclude, therefore, based on a court's limited authority under the FAA to intervene in the arbitral process prior to issuance of an award, that it was appropriate for the district court in this case to dismiss Gulf Guaranty's claims seeking

23

damages for breach, conspiracy, and malice without addressing their merits when that court issued an order re-compelling the parties to arbitration.

**B. Denial of Gulf Guaranty's Motion to Re-open Discovery**

We review a district court's refusal to re-open discovery for abuse of discretion. See Martin's Herend Imports v. Diamond & Gem Trading, 195 F.3d 765, 775 (5th Cir. 1999). Gulf Guaranty requested that the district court re-open discovery with respect to the issue of whether Scofield in fact agreed with Fagg to appointment of Jaynes as a third arbitrator. Once the district court disposed of Gulf Guaranty's other claims, that court denied the discovery motion in its June 22 order without further discussion. Under this circumstance, we conclude that decision was proper. The district court properly found that any alleged coercion regarding the composition of the panel, including whether Jaynes was appointed as an arbitrator, was insufficient as a matter of law to constitute waiver of Connecticut General's right to arbitrate. Any further evidence regarding the dispute over Jaynes' appointment would not alter that finding. Additionally, once the district court properly dismissed Gulf Guaranty's other claims for breach of the arbitration agreement, conspiracy, and malice, and then compelled any remaining disputes between the parties to arbitration, no court claims remained before the district court for which discovery by Gulf Guaranty

24

would have been necessary at that time. Moreover, in the event that arbitration resolved all of the issues between the parties, such discovery in pursuit of Gulf Guaranty's court claims would have been wasteful. We conclude, therefore, that the district court did not abuse its discretion by denying Gulf Guaranty's motion to re-open discovery regarding the dispute over Jaynes's appointment as an arbitrator.

## IV. THE STRIKING OF FAGG AS AN ARBITRATOR BY THE DISTRICT COURT PRIOR TO ISSUANCE OF AN ARBITRAL AWARD

The Defendants filed a motion with the district court to strike Gulf Guaranty's chosen arbitrator, Gary Fagg, from service. The district court interpreted the language of the arbitration agreement to require that only executives of a "life insurance company" may serve as arbitrators. The court thus concluded that, because Fagg is the executive of a reinsurance company, which the court concluded is not a "life insurance company," then Fagg's "qualifications" fail to satisfy a "condition precedent" in the arbitration agreement for Fagg to serve as an arbitrator. The district court thus granted the Defendants' motion to strike Fagg from service as an arbitrator. Gulf Guaranty appeals that decision on the ground that the district court erred in determining that the court had authority to remove Fagg from service as an arbitrator prior to issuance of

an arbitral award based on any qualification of Fagg to serve.[9]
We agree.

As the Supreme Court has acknowledged, the congressional purpose of the FAA is to "move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible."  Moses H. Cone Hosp., 460 U.S. at 22. Additionally, the FAA does not expressly provide for court authority to remove an arbitrator prior to issuance of an arbitral award.  Under the FAA, courts may intervene into the arbitral process to select an arbitrator upon application of a party, if the parties fail to avail themselves of a method for arbitrator selection within their agreement or "if for any reason there shall be a lapse in the naming of an arbitrator."  See 9 U.S.C. § 5 (1999).[10]  However, there is no authorization under

---

[9]   Because we determine that the district court lacked authority to remove Fagg as an arbitrator on the ground of Fagg's qualification to serve, we need not address Gulf Guaranty's alternative argument that the district court erred in that court's interpretation of the arbitration agreement to determine that Fagg was not qualified to serve.

[10]  Section 5 of the FAA states in relevant part:

If in the agreement provision be made for a method of naming or appointing an arbitrator ... or an umpire, such method shall be followed; but if no method be provided ... or if a method be provided and any party thereto shall fail to avail [itself] of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator ... or in filling a vacancy, then upon application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require ....

26

the FAA's express terms for a court to <u>remove</u> an arbitrator from service. Rather, even where arbitrator bias is at issue, the FAA does not provide for removal of an arbitrator from service prior to an award, but only for potential vacatur of any award. <u>See</u> 9 U.S.C. § 10 (1999).[11] Thus, the FAA does not expressly endorse court inquiry into the capacity of any arbitrator to serve prior to issuance of an arbitral award. More importantly, the FAA appears not to endorse court power to remove an arbitrator for any reason prior to issuance of an arbitral award.[12]

---

9 U.S.C. § 5.

[11] Section 10 of the FAA authorizes appeal to the courts seeking vacatur of an arbitral award as follows:

> In any of the following cases the United States court ... may make an order vacating the [arbitral] award upon application of any party to the arbitration – (1) Where the award was procured by corruption, fraud, or undue means. (2) Where there was evident partiality or corruption in the arbitrators .... (3) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or any other misbehavior by which the rights of any party have been prejudiced. (4) Where arbitrators exceed their powers, or so imperfectly execute them that mutual, final, and definite award ... was not made ....

9 U.S.C. § 10.

[12] The district court conceded that if the Defendants challenged that Fagg was biased, the court had no power to review a challenge to Fagg's ability to serve on that basis prior to issuance of an arbitral award.

As the district court conceded, it is well established that prior to issuance of an award, a court may not make inquiry into an arbitrator's capacity to serve based on a challenge that a given arbitrator is biased. See Aviall, Inc. v. Ryder Sys., Inc., 110 F.3d 892, 895 (2d Cir. 1997) ("Although the FAA provides that a court can vacate an award 'where there was evident partiality or corruption in the arbitrators,' ... it does not provide for pre-award removal of an arbitrator.") (quoting 9 U.S.C. § 10).[13] This court has never confronted the question whether, prior to issuance of an arbitral award, a court has authority to remove an arbitrator, as did the district court, based on the type of challenge to the arbitrator's qualification to serve under the terms of the arbitration agreement that is made here. The Second Circuit has found that the FAA's prohibition on removal of arbitrators prior to issuance of an award extends to prohibit "'judicial scrutiny of [either] an arbitrator's qualifications to serve,'" or bias "'other than in a

---

[13]  As the Defendants correctly note, the single unpublished district court decision relied upon by Gulf Guaranty in support of its argument that the district court lacked authority to entertain a challenge to Fagg's qualifications, Nat'l Union Fire Ins. Co. v. Holt Cargo Sys., Inc., No. 99 Civ. 3699, 2000 WL 328802, at *1 (S.D.N.Y. Mar. 28, 2000), involved only a court claim filed by a party prior to an arbitral award, which claim sought removal of an arbitrator for bias. That case did not implicate other qualifications of the arbitrator to serve under the terms of the arbitration agreement of the type asserted by the Defendants in this case. See id. We agree with the Defendants, therefore, that National Union Fire is not persuasive in this circumstance.

28

proceeding to confirm or vacate an award, which necessarily occurs after the arbitrator has rendered his service.'" Id. (quoting Florasynth, Inc. v. Pickholz, 750 F.2d 171, 174 (2d Cir. 1984) (citing Michaels v. Mariforum Shipping, S.A., 624 F.2d 411, 414 n.4 (2d Cir. 1980)); see also Cox v. Piper, Jaffray & Hopwood, Inc., 848 F.2d 842, 843-44 (8th Cir. 1988) ("Appellants cannot obtain judicial review of the arbitrators' decisions about the qualifications of the arbitrators ... prior to the making of an award.") (citing Stroh Container Co. v. Delphi Indus., Inc., 783 F.2d 743, 748-49 (8th Cir. 1986)). In Aviall, the Second Circuit further acknowledged, however, that a court would have the power to remove an arbitrator pursuant to section 2 of the FAA if "the agreement to arbitrate before a particular arbitrator ... is subject to attack under general contract principles ...." 110 F.3d at 895 (citing 9 U.S.C. § 2 (1999)).[14] However, the Second Circuit in Aviall indicated that such removal power "simply manifest[s] the FAA's directive that an agreement to arbitrate shall not be enforced when it would be invalid under general contract principles." Id. at 896. The Second Circuit further suggested that it was appropriate for courts to adjudicate claims regarding the capacity of arbitrators to serve

---

[14] Section 2 of the FAA provides in relevant part: "A written provision ... in any ... contract ... involving commerce to settle by arbitration a controversy ... arising out of such contract ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

only when there is a claim, for example, that there was "fraud in the inducement" or some other "infirmity in the contracting process" regarding the parties' establishing arbitral qualifications, which ground would invalidate the agreement to arbitrate. Id. The Aviall court thus affirmed a district court's summary judgment that it was premature for a court to hear a claim requesting a declaratory judgment that an appointed arbitrator "could not arbitrate the underlying suit." Id. at 895.

In Aviall, the terms of the arbitration agreement required that arbitral disputes would only be submitted to the designated arbitrator if it were an "'independent auditor'" of both parties to the agreement. Id. at 894. The party seeking removal of the arbitrator claimed that the designated accounting arbitrator was not "independent" from one of the parties, as required by the express terms of the agreement, but partial due to a "business relationship" with one of the parties. Id. at 893. The Second Circuit affirmed the district court's decision not to adjudicate the dispute over which arbitrator would hear the underlying arbitral dispute because that court of appeals found that the dispute over whether the auditor arbitrator was sufficiently "independent" to satisfy the terms of the arbitration agreement did not constitute a claim "invalidating the contract" or a claim of some type of fraud in the inducement that would suggest that the validity of the agreement to arbitrate is under attack under

30

general contract principles.  See id. at 895-97.  We agree with this approach by the Second Circuit interpreting the FAA to mean that a court may not entertain disputes over the qualifications of an arbitrator to serve merely because a party claims that enforcement of the contract by its terms is at issue, unless such claim raises concerns rising to the level that the very validity of the agreement is at issue.[15]

We further note that, as one district court within the Second Circuit correctly pointed out, a "prime objective of arbitration law is to permit a just and expeditious result with a minimum of judicial interference" and any other such rule could "spawn endless applications [to the courts] and indefinite delay" and that otherwise "there would be no assurance that [the party seeking removal] would be satisfied with [the removed

---

[15]  We acknowledge that at least two lower courts have entertained disputes over the qualifications of arbitrators to serve in a manner that arguably supports court intervention into the challenge made by the Defendants' to Fagg's qualification to serve.  See Jefferson-Pilot Life Ins. Co. v. LeafRe Reinsurance Co., No. 00-C-5257, 2000 WL 1724661, at *2(N.D. Ill. Nov. 20, 2000) (finding by the district judge that "whether a party challenges an arbitrator's qualifications - just like a party who challenges bias - must wait until the post award stage to complain ... I do not think that is necessary"); In re Arbitration Between Certain Underwriters at Lloyds, London, 1997 WL 461035, at *4, 5 (N.D. Ill. Aug. 11, 1997) (arguably misconstruing Aviall, 110 F.3d at 895-97, to endorse the district court's conclusion that it could entertain a party's challenge to an arbitrator's qualification to serve based on the arbitrator's status as an "executive officer" pursuant to the terms of the arbitration agreement in that case).  We find however, that these decisions conflict with the purpose of the FAA and its policy favoring arbitration of disputes prior to court intervention.

arbitrator's] successor and would not bring yet another proceeding to disqualify him or her." <u>Marc Rich & Co. v. Transmarine Seaways Corp.</u>, 443 F. Supp. 386, 387-88 (S.D.N.Y. 1995) (finding that "this objective can best be achieved by requiring an arbitrator ... to declare any possible disqualification, and then to leave it to his or her sound judgment to determine whether to withdraw ... of course be[ing] aware that such a decision would be subject to judicial review after the award had been made" pursuant to the limits of section 10 of the FAA). We agree with this assessment by that district court of the danger prior to issuance of an arbitral award in allowing courts to adjudicate a challenge such as that made by the Defendants to Fagg's qualification to serve, based on whether Fagg is the executive of a reinsurer or an insurer pursuant to the terms of the arbitration agreement. We conclude, therefore, that the dispute regarding Fagg's qualification to serve, although framed as a request to the court to enforce the arbitration agreement by its terms, is not the type of challenge that the district court was authorized to adjudicate pursuant to the FAA prior to issuance of an arbitral award. We further conclude, therefore, that the district court had no authority to strike Fagg from service as an arbitrator and reverse that decision.

## V.  CONCLUSION

For the foregoing reasons, we AFFIRM the district court's order compelling arbitration of the entire dispute between Gulf Guaranty and Connecticut General in this consolidated action. We also AFFIRM the district court's decision dismissing Gulf Guaranty's claims for breach of the arbitration agreement, and dismissing Gulf Guaranty's claims for breach, conspiracy, and some tort of malice. We likewise AFFIRM the district court's decision denying Gulf Guaranty's motion to re-open discovery. However, we REVERSE the district court's decision granting the Defendants' motion to strike Gary Fagg from service as an arbitrator. Costs shall be borne by Gulf Guaranty.