OAKLAND-MACOMB INTERCEPTOR DRAIN DRAINAGE DISTRICT
v RIC-MAN CONSTRUCTION, INC

Docket No. 314098. Submitted October 8, 2013, at Detroit. Decided January 30, 2014, at 9:10 a.m.

The Oakland-Macomb Interceptor Drain Drainage District (OMIDDD) brought an action for declaratory and injunctive relief against Ric-Man Construction, Inc., and the American Arbitration Association (AAA) in the Oakland Circuit Court, seeking to enforce the terms of an arbitration agreement that the OMIDDD entered into with Ric-Man to resolve several multimillion-dollar claims arising from Ric-Man's contractual agreements with the OMIDDD to repair a portion of the Oakland-Macomb sanitary-sewer system. Specifically, plaintiff sought to enforce the provisions of the arbitration agreement that set forth a detailed procedure for choosing the members of the arbitration panel, which was to include two construction-industry professionals and one attorney with background in construction litigation, after the AAA appointed a member to the attorney position who did not meet the minimum acceptable level of qualifications. The court, Colleen A. O'Brien, J., denied plaintiff's motion for summary disposition and dismissed the case, ruling that there was no basis on which to grant plaintiff declaratory or injunctive relief. Plaintiff appealed.

The Court of Appeals held:

Under the Federal Arbitration Act (FAA), 9 USC 4 and 5, a court may grant a party's petition for relief before an arbitral award has been made if the arbitration agreement explicitly specifies detailed qualifications that an arbitrator must possess and the third-party administrator fails to appoint an arbitrator that meets these qualifications.

Reversed and remanded for the trial court to issue an order consistent with this opinion and to award plaintiff costs and attorney fees.

JANSEN, J., dissenting, concluded that the trial court reached the right result, albeit for the wrong reason, because the FAA does not allow courts to review decisions about the qualification of arbitrators before an award is made, regardless of the

requirements set forth in the arbitration agreement, absent fraud or other infirmity in the contracting process that would constitute legal or equitable grounds for revoking the agreement.

ARBITRATION — FEDERAL ARBITRATION ACT — PROVISIONS ESTABLISHING ARBITRATOR QUALIFICATIONS — PREARBITRATION ENFORCEMENT.

A court may grant a party's petition for relief before an arbitral award has been made if the arbitration agreement explicitly specifies detailed qualifications that an arbitrator must possess and the third-party administrator fails to appoint an arbitrator that meets these qualifications (9 USC 4 and 5).

*Kotz Sangster Wysocki PC* (by *Jeffrey M. Sangster* and *Barry J. Jensen*) for Oakland-Macomb Interceptor Drain Drainage District.

*McAlpine PC* (by *Mark McAlpine, Marcus R. Sanborn,* and *David M. Zack*) for Ric-Man Construction, Inc.

Before: SAAD, P.J., and SAWYER and JANSEN, JJ.

SAAD, P.J. Plaintiff Oakland-Macomb Interceptor Drain Drainage District ("Drainage District"), a public sector drainage district, seeks to enforce provisions of its agreement to arbitrate with defendant Ric-Man Construction. The American Arbitration Association (AAA) failed to appoint a lawyer-member of the arbitral panel that had the specific, specialized qualifications set forth in the parties' agreement.

I. NATURE OF THE CASE

Plaintiff's objection to the AAA's failure to comply with the contractual requirements of a specific, highly specialized arbitral agreement raises an issue of first impression for a Michigan court's application of the Federal Arbitration Act (FAA), 9 USC 1 *et seq*. That is, will our courts enforce the conditions of an arbitral

agreement before the arbitral award has been issued
when (1) the underlying subject matter of the arbitra-
tion involves complex technical and legal issues, (2) the
arbitration agreement requires that the arbitrators
possess a highly specialized professional background,
and (3) the arbitration agreement specifically outlines a
precise method to select said arbitrators?

Other courts that have looked at this narrow, but
important, issue have made the following distinction,
which informs our analysis: Courts will not entertain
suits to address preaward general objections to the
impartiality or expertise of an arbitrator. But when suit
is brought, as here, to enforce the key provisions of the
agreement to arbitrate—i.e., when the criteria and
method for choosing arbitrators are at the heart of the
arbitration agreement—then courts will enforce these
contractual mandates. To rule otherwise would essen-
tially rewrite the parties' contract and rob the objecting
party of this key contractual right to have a panel with
the specialized qualifications necessary to make an
informed arbitral ruling—which goes to the precise
purpose and reason to arbitrate such technically and
legally complex claims.

With this key distinction in mind and after a careful
review of the comprehensive arbitration agreement,[1] we
note that this is not the standard, garden-variety,
simple arbitration case or arbitration agreement. To the
contrary, every provision of this arbitration agreement
reveals that this is a complex matter, both technically
and legally. Indeed, the agreement was "tailor made" to
arbitrate a complex, large, public-sector sewer construc-
tion project, and it was entered into only *after* the
parties encountered multimillion-dollar disputes
against each other, which they could not resolve. And

[1] The agreement is attached as an appendix.

the agreement provides for extensive discovery; contains unusual provisions for waivers, statute of limitations, res judicata, and recorded proceedings; and mandates detailed findings by the panel in anticipation of potential claims by and against vendors, consultants, and other interested third parties.

In addition, the arbitration agreement expressly modifies the already sophisticated complex construction rules of the AAA by mandating very specific qualifications for the three-member arbitral panel and outlining the precise manner in which the AAA must appoint these panel members. Again, the parties spelled out very particularized qualifications that the panel members must possess. Their specialized experience would make it more likely that the panel would understand the complexity of the technical and legal issues presented, and thus render an informed decision.

Any objective reading of this agreement to arbitrate makes this intention very clear. Neither the parties to the agreement nor the AAA—which agreed to act as the third-party entity to implement this arbitration agreement—could possibly misunderstand or miss the significance of having high-level, quality arbitrators to hear the matters at issue and render an informed arbitral ruling. Therefore, when the AAA blatantly and inexplicably ignored these key provisions, plaintiff had only one course of action to ensure an arbitral hearing with the type of panel envisioned: it brought suit to enforce the contract. Notwithstanding the plain language of the agreement, defendant took the position that these provisions did not clearly call for the qualifications claimed by plaintiff. It also claimed that plaintiff's prearbitration suit to enforce said provisions was premature and contrary to the FAA that, it says, disallows prearbitration litigation regarding the qualifications of an arbitrator.

We disagree with defendant on both points and with the trial court, which ruled for defendant. Instead, we hold that it is abundantly clear that the agreement to arbitrate made the specialized qualifications of the panel central and key to the entire agreement. We also hold that when, as here, a provision to arbitrate is central to the agreement, the FAA provides that it should be enforced by the courts before the arbitral hearing.

The shibboleth that this approach would encourage delays is an artful and convenient dodge. It is quite obvious here that plaintiff strongly desires arbitration and, in fact, insists on an arbitral hearing, but only if it is meaningful, as contemplated by the contract between the parties. We also regard defendant's contention that the AAA followed the agreement as, at best, disingenuous.

For the reasons set forth in this opinion, we reject defendant's arguments, reverse the trial court's findings, and remand to the trial court to issue an order to the AAA consistent with this opinion.

## II. FACTS AND PROCEDURAL HISTORY

Plaintiff is a special-purpose public corporation established under the Drain Code, MCL 280.1 *et seq.* It owns the Oakland-Macomb Interceptor (OMI), which is part of an extensive sanitary-sewer system that delivers wastewater from suburban areas to the Detroit Water and Sewerage Department for treatment. Defendant Ric-Man is a construction company that entered into two contracts with plaintiff to build infrastructure needed to perform repairs on the OMI. These construction contracts include a brief dispute-resolution clause, which allowed the parties to agree to submit the claim to another dispute resolution process. Because plaintiff

and defendant asserted serious multimillion-dollar claims against each other during the construction project, they implemented their contractual right to amend their initial contract with a much more detailed arbitration agreement. The new arbitration agreement submitted the dispute to binding arbitration, to be administered by the AAA, and it specified in § 1.3 that the arbitration panel had to consist of two construction-industry professionals and one attorney with a *"background in construction litigation"* (emphasis added). The agreement also outlined a detailed set of requirements for the AAA to follow in the event that it, and not the parties, selected an arbitrator. In the relevant sections, the agreement states:

> § 1.3.4 Any selected arbitrator will be a member of the AAA Construction Panel. The arbitration panel shall include one construction lawyer and two construction professionals agreed upon by the parties or selected in accordance with the criteria set out below. If any arbitrators are selected by AAA, selection criteria shall be applied in the following order with the next level of criteria applied *only if no candidates are available who meet the preceding criteria* [emphasis added]:
>
> § 1.3.4.1 Construction Lawyer (1 member and 1 alternate)
>
> A [m]ember of the Large Complex Construction Dispute ("LCCD") panel and at least *20 years of experience in construction law* with an emphasis in heavy construction. [Emphasis added.]
>
> At least 20 years of experience in construction law with an emphasis in heavy construction.
>
> A member of the LCCD panel and at least 10 years of experience with an emphasis in heavy [c]onstruction.
>
> At least 10 years of experience with an emphasis in heavy [c]onstruction.

A member of the LCCD panel and at least 20 years of experience in construction law with some experience in heavy construction.

At least 20 years of experience in construction law with some experience in heavy construction.

A member of the LCCD panel and at least 10 years of experience with some experience in heavy construction.

At least 10 years of experience with some experience in heavy construction.

Accordingly, the key provisions—and those provisions directly pertinent to this appeal—concern the composition and selection of the arbitral panel. If the parties could not agree on two construction professionals and one construction lawyer, then the AAA would choose a panel member that met the parties' stipulated qualifications. And, in order to ensure that the most qualified available lawyer was chosen, the arbitration agreement specifies the declining, but minimal order of qualifications in the event a lawyer with all the desired qualifications is unavailable. Taken together,[2] these provisions obviously attest to the importance and centrality of the qualifications of the arbitrators to the parties' agreement to arbitrate. The central point of these provisions is that the parties agreed that, if available, the lawyer-member of the three-member arbitral panel must (1) be an attorney with experience in construction litigation, (2) possess 20 years' experience in construction law with an emphasis in heavy construction, and (3) be a member of the Large Complex Construction Dispute panel.

These portions of the arbitration agreement were triggered in January 2012, when the Drainage District

---

[2] "We read contracts as a whole, giving harmonious effect, if possible, to each word and phrase." *Wilkie v Auto-Owners Ins Co,* 469 Mich 41, 50 n 11; 664 NW2d 776 (2003).

filed its demand with the AAA for arbitration against Ric-Man. Both parties selected the two construction-industry-professional arbitrators from a list supplied by the AAA. But they could not agree on the construction-litigator arbitrator, thus leaving that position to be filled by the AAA in accordance with the procedures, methodology, and selection criteria specified in the arbitration agreement.

In August 2012, the AAA notified the Drainage District and Ric-Man that it had chosen Michael Hayslip as the construction-litigator member of the panel. Hayslip unquestionably did not meet the qualification requirements of the contract. Though Hayslip was admitted to the Ohio bar in 1994, and worked in the construction industry throughout his career,[3] he had no background in construction litigation—much less 20 years of experience with an emphasis in heavy construction, which is a key qualification required by the arbitration agreement—nor was he a member of the AAA's LCCD panel. The Drainage District immediately objected to the AAA's disregard of the arbitration agreement, but the AAA nonetheless reaffirmed its appointment of Hayslip.

Plaintiff subsequently filed suit against Ric-Man and the AAA in October 2012 to enforce its contractual right to have an attorney with the aforementioned qualifications on the panel. Plaintiff sought (1) a declaration that the AAA was required to appoint a lawyer with a background in construction litigation in compliance with the arbitrator-selection procedures specified in the

---

[3] After plaintiff brought suit, the AAA also chose Thomas Weiers as an alternate attorney-arbitrator. At the time of his appointment, Weiers had 25 years' experience as a construction-industry attorney, with knowledge of both heavy construction and construction litigation, and was a member of the AAA's LCCD panel.

arbitration agreement, (2) an injunction ordering the AAA to do the same, and (3) a judgment of summary disposition under MCR 2.116(C)(10), stating that Hayslip lacked the necessary experience required by the agreement and that any award issued by the current arbitration panel was void.

Plaintiff also alleged that the AAA failed to follow the arbitrator-selection process outlined in the agreement, pointing to Hayslip's relative lack of experience when compared to the alternate attorney-arbitrator, Weiers. Of course, as noted, in addition to his lack of experience in construction litigation, Hayslip's professional background did not meet the first two criteria the AAA was supposed to take into account when choosing arbitrators: (1) he was not a Large Complex Construction Dispute panel member with at least 20 years of experience in construction law, and (2) he did not have at least 20 years of experience in construction law with an emphasis in heavy construction. Whereas Hayslip did not satisfy either qualification, Weiers possessed both.

In response, Ric-Man stated that a court cannot second-guess an arbitration decision and that the AAA followed the specified arbitrator-selection process. It contended that the arbitration agreement did not actually require the attorney-arbitrator to have construction-litigation experience, and that plaintiff sued simply because it was unhappy with the selected group of arbitrators.

The trial court rejected plaintiff's arguments, and held, erroneously, that the AAA's selection of Hayslip complied with the plain language of the arbitration agreement. In so doing, it ruled that there was no language in the arbitration agreement requiring the AAA to appoint a construction lawyer with 10 to 20

years of construction-litigation experience. The trial court denied plaintiff's motion for summary disposition and dismissed the case.

Plaintiff filed an appeal in January 2013, claiming that the trial court erred when it denied the motion for summary disposition and dismissed the complaint. Specifically, plaintiff requests that our Court order the AAA to comply with the arbitration agreement.

### III. STANDARD OF REVIEW

"This Court reviews de novo a trial court's decision on a motion for summary disposition." *Hackel v Macomb Co Comm*, 298 Mich App 311, 315; 826 NW2d 753 (2012). "In reviewing a motion under MCR 2.116(C)(10), this Court considers the pleadings, admissions, affidavits, and other relevant documentary evidence of record in the light most favorable to the nonmoving party to determine whether any genuine issue of material fact exists to warrant a trial." *Walsh v Taylor*, 263 Mich App 618, 621; 689 NW2d 506 (2004). "Summary disposition is appropriate if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Latham v Barton Malow Co*, 480 Mich 105, 111; 746 NW2d 868 (2008). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003).

The interpretation of a contract presents a question of law that is reviewed de novo. *Kloian v Domino's Pizza, LLC*, 273 Mich App 449, 452; 733 NW2d 766 (2006). "Arbitration agreements are generally interpreted in the same manner as ordinary contracts. They must be enforced according to their terms to effectuate

the intentions of the parties." *Bayati v Bayati*, 264 Mich App 595, 599; 691 NW2d 812 (2004) (citation omitted). See also *Equal Employment Opportunity Comm v Frank's Nursery & Crafts, Inc*, 177 F3d 448, 460 (CA 6, 1999) ("Because courts are to treat agreements to arbitrate as all other contracts, they must apply general principles of contract interpretation to the interpretation of an agreement covered by the FAA.").

### IV. ANALYSIS

Because both the Drainage District and Ric-Man agree that this case involves materials shipped through interstate commerce and is thus is governed by the FAA,[4] we begin our analysis with the plain language of the applicable statute. Section 5 of the FAA, which governs the appointment of arbitrators, states: *"If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed . . . ."* 9 USC 5 (emphasis added). Significantly, to implement the mandate of § 5, the use of the term "shall" indicates that compliance with the methods specified in the agreement is mandatory.[5] Further, to give life to this mandate, § 4 of the FAA permits "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration" to "petition any United States district court . . . for an

---

[4] See *Burns v Olde Discount Corp*, 212 Mich App 576, 580; 538 NW2d 686 (1995) (stating that "[t]he [FAA] governs actions in both federal and state courts arising out of contracts involving interstate commerce"). "State courts are bound under the Supremacy Clause, US Const, art VI, § 2, to enforce the substantive provisions of the federal act." *Id*.

[5] "The word 'shall' is generally used to designate a mandatory provision . . . ." *Old Kent Bank v Kal Kustom Enterprises*, 255 Mich App 524, 532; 660 NW2d 384 (2003).

order directing that such arbitration proceed in the manner provided for in such agreement." 9 USC 4.

Therefore, under §§ 4 and 5 of the FAA, courts have a statutory obligation to protect arbitral parties from abuse by the third-party agency conducting the arbitration. See *Morrison v Circuit City Stores, Inc*, 317 F3d 646, 678 (CA 6, 2003). If courts were to refuse prearbitration relief, arbitration agencies could ignore with impunity the specific terms of the arbitration agreement, thus effectively modifying the agreed-upon terms without each party's consent. See *id.* at 678-680; *Farrell v Subway Int'l, BV*, unpublished opinion of the United States District Court for the Southern District of New York, issued March 23, 2011 (Docket No. 11 Civ 08), pp 10-11 ("[F]ederal law directs that the Court enforce the selection of the arbitrator in accordance with the terms of the [parties'] Agreement . . . .") citing 9 USC 5; and *Jefferson-Pilot Life Ins Co v LeafRe Reinsurance Co*, unpublished opinion of the United States District Court for the Northern District of Illinois, issued November 20, 2000 (Docket No. 00 C 5257), p 4 ("The [FAA] clearly states that contractual provisions for the appointment of an arbitrator 'shall be followed.' "), quoting 9 USC 5. To prevent such a material alteration of the contract, in cases in which the "parties have agreed to arbitrate, but disagree as to the operation or implementation of that agreement," a court can remove an arbitrator before an award has been granted. *B/E Aerospace, Inc v Jet Aviation St Louis, Inc*, unpublished opinion of the United States District Court for the Southern District of New York, issued July 1, 2011 (Docket No. 11 Civ 4032), p 3 (citations and quotation marks omitted).

Accordingly, a party may petition a court for relief before an arbitral award has been made if (1) the

arbitration agreement explicitly specifies detailed quali-
fications the arbitrator must possess, and (2) the third-
party arbitration administrator fails to appoint an
arbitrator that meets these specified qualifications.
Therefore, a court may issue an "order, pursuant to § 4
of the FAA, requiring that the arbitration proceedings
conform to the terms of the arbitration agreement
entered into by the parties." *Morrison*, 317 F3d at 678.

To hold otherwise under these facts would negate the
purpose of arbitration: parties make arbitration agree-
ments with the expectation that the third-party arbitral
agency will honor important provisions of the agree-
ments. If that agency disregards the explicit terms of
the arbitration agreement—terms that were central to
the initial contract between the parties—the disadvan-
taged party must have some access to judicial relief, and
relief can be effective only before the arbitral hearing.

In such cases—as here, and contrary to defendant's
argument and the trial court's ruling—it is not prema-
ture to give the disadvantaged party access to judicial
relief before an arbitral award has been made.[6] Essen-

---

[6] Our ruling conflicts with a decision of the United States Court of
Appeals for the Fifth Circuit, which held that parties generally may not
challenge the appointment of an arbitrator before an arbitral award is
issued. *Gulf Guaranty Life Ins Co v Conn Gen Life Ins Co*, 304 F3d 476,
489-490 (CA 5, 2002) (holding that "the FAA does not expressly provide
for court authority to remove an arbitrator prior to the issuance of an
arbitral award" and "does not expressly endorse court inquiry into the
capacity of any arbitrator to serve prior to issuance of an arbitral award")
(emphasis omitted). As the Fifth Circuit explained, this narrow interpre-
tation of a court's authority in the preaward stages of an FAA dispute
prevents "endless applications [to the courts] and infinite delay" and also
stops overly litigious parties from bringing lawsuit after lawsuit to delay
arbitration. *Id.* at 492 (citations and quotation marks omitted).

As noted, we do not find this analysis applicable to or persuasive
under the specific circumstances of our case. See *Truel v City of Dearborn*,
291 Mich App 125, 136 n 3; 804 NW2d 744 (2010) (noting that "[d]eci-

tially, this is the only opportunity the objecting party has to demand an arbitration panel that conforms to the arbitration agreement. If the objecting party waits until the award has been made, it is very improbable that a court will offer relief. See *Bell v Seabury*, 243 Mich App 413, 421-422; 622 NW2d 347 (2000) (stating that "arbitral awards are given great deference and courts have stated unequivocally that they should not be lightly set aside"); and *Dawahare v Spencer*, 210 F3d 666, 669 (CA 6, 2000) (holding that "[a]n arbitration decision must fly in the face of established legal precedent for [a court] to find manifest disregard of the law") (citations and quotation marks omitted). Thus, to prevent the party from receiving prearbitration relief would undermine the very purpose of an arbitration agreement, which is to ensure swift extrajudicial resolution of a dispute under bargained-for terms. See *City of Bridgeport v Kasper Group, Inc*, 278 Conn 466, 485; 899 A2d 523 (Conn 2006) (stating that "the primary goal of arbitration . . . is to provide the efficient, economical and expeditious resolution of private disputes") (citation and quotation marks omitted). And, here, contrary to the trial court's ruling, the agreement to arbitrate made it very clear that the lawyer member of the panel must have specific and substantial experience in construction litigation—and yet the AAA chose a lawyer with no such experience.

---

sions from lower federal courts are not binding but may be considered persuasive"). As noted, requiring an objecting party to wait until an arbitral award has been issued before bringing a claim related to the composition of the arbitral panel, when said expertise is critical to a fully informed arbitral hearing, essentially robs the party of any opportunity to receive judicial relief. *Guaranty* also evinces an unwarranted lack of faith in the competence of our judiciary to distinguish between real and serious objections, as here, and frivolous developing tactics. We trust that in most cases, as here, the distinction is clear and obvious, and that courts should provide relief under the FAA.

Accordingly, the AAA obviously ignored the arbitration agreement when it made Hayslip the attorney arbitrator. The AAA could have easily corrected its failure to comply with the arbitration agreement when the Drainage District protested Hayslip's selection, but it did not. Evidently, there were attorneys available to serve as arbitrators who met all the conditions of plaintiff and defendant's contract, as demonstrated by the AAA's decision to make Weiers—a lawyer with a "background in construction litigation"—the alternate attorney-arbitrator.[7] The AAA's refusal to comply with the arbitration agreement's stated terms robbed the Drainage District of its bargained-for terms, and AAA's repudiation of its obligation cannot be sanctioned by this Court.

### V. CONCLUSION

Pursuant to FAA §§ 4 and 5, plaintiff may enforce the precise language of the arbitration contract relating to the qualifications of the arbitrators and the method of choosing the arbitrators. Accordingly, we reverse and remand to the trial court to issue an order to the AAA requiring it to appoint an arbitral panel member who meets the criteria called for in the arbitration agreement, so that any subsequent arbitration will "proceed in the manner provided for in such agreement." 9 USC 4; see also *Morrison*, 317 F3d at 678. We also award plaintiff its costs and attorney fees to be assessed by the

---

[7] As noted, Weiers was appointed as an alternate attorney-arbitrator *after* this litigation began. Our analysis might have been different if, on appointing Hayslip, the AAA had told plaintiff and defendant Ric-Man that it was unable to find any arbitrators that satisfied the contract terms. The AAA did not do so, however, and Ric-Man does not make this allegation on appeal—in fact, Ric-Man continues to maintain that Hayslip was qualified to serve as an arbitrator under the terms of the arbitration agreement, which he clearly is not.

trial court upon remand, which shall include the costs and attorney fees at both the trial and appellate level.

Reversed and remanded. We do not retain jurisdiction.

SAWYER, J., concurred with SAAD, P.J.

JANSEN, J. (*dissenting*). Because I conclude that the circuit court reached the correct result in this case, albeit for the wrong reason, I must respectfully dissent.

The circuit court dismissed plaintiff's complaint for declaratory and injunctive relief, concluding that defendant American Arbitration Association (AAA) had fully complied with the plain language of the arbitration agreement when it selected Michael Hayslip as the lawyer-member of the arbitral panel. The circuit court ruled that plaintiff was "reading into the arbitration [agreement] a requirement that does not exist."

The circuit court reached the correct result by dismissing plaintiff's complaint, even though it did so for the wrong reason. For purposes of this appeal, it actually makes no difference whether the arbitration agreement required AAA to appoint a lawyer-member with a particular number of years of construction litigation experience. Irrespective of the exact requirements set forth in the arbitration agreement at issue in this case, it is well settled that "[a]ppellants cannot obtain judicial review of . . . decisions about the qualifications of the arbitrators . . . prior to the making of an award." *Cox v Piper, Jaffray & Hopwood, Inc*, 848 F2d 842, 843-844 (CA 8, 1988). The Federal Arbitration Act (FAA), 9 USC 1 *et seq.*, "does not provide for pre-award removal of an arbitrator."[1] *Aviall, Inc v Ryder System,*

---

[1] It is undisputed that the FAA applies in this case.

*Inc*, 110 F3d 892, 895 (CA 2, 1997). Indeed, " 'it is well established that a . . . court cannot entertain an attack upon the qualifications . . . of arbitrators until after the conclusion of the arbitration and the rendition of an award.' " *Id.*, quoting *Michaels v Mariforum Shipping, SA*, 624 F2d 411, 414 n 4 (CA 2, 1980). "The [FAA] does not provide for judicial scrutiny of an arbitrator's qualifications to serve, other than in a proceeding to confirm or vacate an award, which necessarily occurs after the arbitrator has rendered his service." *Florasynth, Inc v Pickholz*, 750 F2d 171, 174 (CA 2, 1984); see also *Gulf Guaranty Life Ins Co v Connecticut Gen Life Ins Co*, 304 F3d 476, 490-491 (CA 5, 2002).

Of course, a court would have the authority to remove a particular arbitrator prior to issuance of the arbitral award if the dispute concerning the arbitrator's qualifications implicated "grounds . . . at law or in equity for the revocation of [the] contract." 9 USC 2; see also *Aviall*, 110 F3d at 895. However, it is appropriate for the court to make such a preaward removal "only when there is a claim, for example, that there was 'fraud in the inducement' or some other 'infirmity in the contracting process' regarding the parties' establishing arbitral qualifications, which ground would invalidate the agreement to arbitrate." *Gulf Guaranty*, 304 F3d at 491, quoting *Aviall*, 110 F3d at 896. Similarly, preaward removal may be permissible under § 2 of the FAA when "the arbitrator's relationship to one party was undisclosed, or unanticipated and unintended, thereby invalidating the contract." *Aviall*, 110 F3d at 896.

In the present case, there is no claim that AAA's selection of Hayslip as the lawyer-member of the arbitral panel involved fraud or any other fundamental infirmity in the contracting process that would com-

pletely invalidate the arbitration agreement. See 9 USC 2; see also *Gulf Guaranty*, 304 F3d at 491. Nor is there any claim that Hayslip had an inappropriate relationship with either party. See *Aviall*, 110 F3d at 896. It may well be that Hayslip did not meet the specific requirements for appointment set forth in the arbitration agreement. But plaintiff was required to wait until after issuance of the arbitral award and raise this matter in a proceeding to vacate. See 9 USC 10; see also *Gulf Guaranty*, 304 F3d at 490-491; *Florasynth*, 750 F2d at 174.

Because the dispute over Hayslip's qualifications to serve as the lawyer-member did not constitute a sufficient ground to warrant revocation of the entire arbitration agreement, the circuit court was without authority to reach the issue at this stage of the proceedings. See 9 USC 2; see also *Gulf Guaranty*, 304 F3d at 491 (noting that "a court may not entertain disputes over the qualifications of an arbitrator to serve merely because a party claims that enforcement of the contract by its terms is at issue, unless such claim raises concerns rising to the level that the very validity of the agreement be at issue"). The dispute regarding Hayslip's qualifications to serve, although framed by plaintiff as a request to enforce the arbitration agreement according to its terms, "is not the type of challenge that the [circuit] court was authorized to adjudicate pursuant to the FAA prior to issuance of an arbitral award." *Id.* at 492.[2]

---

[2] As the majority opinion correctly observes, "[d]ecisions from lower federal courts are not binding but may be considered persuasive." *Truel v City of Dearborn*, 291 Mich App 125, 136 n 3; 804 NW2d 744 (2010). At the same time, however, the Supremacy Clause precludes this Court from applying any state law or policy that is inconsistent with the FAA. See *Abela v Gen Motors Corp*, 257 Mich App 513, 524-525; 669 NW2d 271 (2003), aff'd 469 Mich 603 (2004). Both our Supreme Court and this

In my opinion, the circuit court reached the correct result, albeit for the wrong reason, when it dismissed plaintiff's complaint. "It is well settled that we will not reverse when the circuit court has reached the correct result, even if it has done so for the wrong reason." *Hare v Starr Commonwealth Corp*, 291 Mich App 206, 226; 813 NW2d 752 (2011). I would affirm the circuit court's dismissal of plaintiff's complaint.

---

Court have looked to the decisions of lower federal courts when interpreting and applying the FAA. See, e.g., *Abela v Gen Motors Corp*, 469 Mich 603, 607; 677 NW2d 325 (2004); *Scanlon v P&J Enterprises, Inc*, 182 Mich App 347, 351; 451 NW2d 616 (1990).

## APPENDIX

### AMENDMENT TO CONTRACT GENERAL CONDITION 16.01

### ALTERNATIVE DISPUTE RESOLUTION AGREEMENT

IN CONSIDERATION of the mutual promises contained in this Alternative Dispute Resolution Agreement ("Agreement"), Oakland-Macomb Interceptor Drain Drainage District ("OMIDDD") and Ric-Man Construction, Inc. ("Ric-Man") agree to amend Contract 1 and Contract 2 as identified below by adding their agreement for alternate dispute resolution procedures pursuant to Section 16.01 of the General conditions as follows, effective this _12th_ day of _April_____, 2011:

#### 1.    RECITALS

On or about January 19, 2010 OMIDDD and Ric-Man entered into a contract for the construction of sewer access and control structures designated as Installation of Flow Control Measures Edison Corridor Interceptor, Macomb County Michigan designated as Contract 1 ("Contract 1").

On or about January 19, 2010, OMIDDD and Ric-Man entered into a contract for the Installation of Flow Control Measures Oakland Arm Interceptor Macomb County, Michigan designated as Contract 2 ("Contract 2"). As used herein, "Projects" is defined as the work performed or required to be performed under Contract 1 and Contract 2.

During construction of the Projects, Ric-Man has raised various claims for additional time and compensation for performing the work and asserted extra work, including by example, claims allegedly arising under the Spearin Doctrine and for alleged differing site conditions. OMIDDD has also raised claims against Ric-Man for credits, reimbursement and other damages allegedly arising from Ric-Man's work on the Projects. Contract 1 and Contract 2 provide that the parties may resolve claims or disputes through any form of alternative dispute resolution agreed upon by the parties.

OMIDDD and Ric-Man now seek to amend Contract 1 and Contract 2 by adding their agreement for alternate dispute resolution procedures pursuant to Section 16.01 of the General conditions for the resolution of any and all claims, disputes, or controversies regarding the Projects through binding arbitration as follows:

#### II.    AGREEMENT FOR ALTERNATIVE DISPUTE RESOLUTION

##### § 1.1    ARBITRATION AGREEMENT.

§ 1.1.1 This Agreement defines the exclusive terms for binding arbitration for any claims arising out of, or related to the Projects as provided upon agreement of the parties in Section 16.01 of the General Conditions of Contract 1 and Contract 2.

§1.1.2 Any claim or dispute, arising out of or related to the Projects, between OMIDDD and Ric Man shall be subject to binding arbitration administered by the American Arbitration Association ("AAA") in accordance with its Construction Industry Arbitration Rules which include Large, Complex Construction Dispute Rules in effect on the date of this Agreement, as modified by the terms of this agreement.

## APPENDIX

§ 1.2 DEMAND FOR ARBITRATION. A demand for arbitration shall be made in writing, delivered to the other party to the Contract, and filed with the AAA. The party filing a demand for arbitration must assert in the demand all accrued claims then known to that party on which arbitration is permitted to be demanded. Each claim shall be discretely and specifically set out in the arbitration demand. Any accrued claim which is known to a party, or which should be known based on the available factual information, is waived if not asserted in the arbitration demand. A demand for arbitration may be made at any time following execution of this Agreement by all parties, however no discovery or arbitration hearings shall proceed unless the requesting party has provided a complete and detailed description of each discrete claim that will be asserted by that party and agrees that no further claims will be asserted in relation to the Projects. All discovery and arbitration hearings shall be postponed until the preceding condition is satisfied. The Arbitration Panel may allow the addition of a claim that is not included in the description of claims identified above only if the panel finds that the claim was neither known nor reasonably should have been known based on the available factual information. A party may not amend their arbitration demand merely on the grounds that the party elected to file their claim before the project was completed, or on the grounds that they had not completed their claim analysis (i.e. a party is at risk of waiving their additional claims if they submit their statement that no further claims will be made, prior to completion of the project, and/or prior to completion of their analysis of potential claims).

In no event shall a demand for arbitration be made after the date when the institution of legal or equitable proceedings based on the claim(s) would be barred by the applicable statute of limitations or applicable contractual limitations period. For statute of limitations, or contractual limitations purposes, receipt of a written demand for arbitration by the person or entity administering the arbitration shall constitute the institution of legal or equitable proceedings based on the claim(s). An arbitration demand shall only address claims arising from or related to the Projects. If demands for arbitration are filed on both Contract 1 and Contract 2, the demands will be asserted in a single demand for arbitration before a single arbitration panel. For purposes of statute of limitations, each claim from each Contract shall be considered separately and the time for bringing a claim based on one Contract will not be extended by time limits applicable to claims for the other Contract.

Unless otherwise agreed by the parties in writing, the arbitration demand shall include only claims and disputes between OMIDDD and Ric-Man.

§ 1.3 SELECTION OF ARBITRATORS. Any arbitration conducted pursuant to this agreement shall be decided by a panel of three arbitrators. This panel shall consist of two construction industry professionals and one attorney with a background in construction litigation. All arbitration hearings shall be conducted at the AAA office in Southfield Michigan, unless the parties agree to an alternate location in Southeastern Michigan.

Once a demand for arbitration is filed, the parties shall jointly ask the AAA to distribute a list of at least 25 approved construction arbitrators. The parties shall request that AAA provide a list of 25 potential construction arbitrators who best meet the criteria set forth in section 1.3.4 below and who are closest geographically to the Southfield office of AAA. Priority shall be given to proximity first and to the remaining criteria second without regard to priority of the remaining criteria. The 100 mile limitation set out in § 1.3.3 below shall not apply to this initial selection. Within thirty (30) days of the date of receipt of the list of arbitrators, the parties shall

### APPENDIX

mutually agree upon a panel of three arbitrators, who are mutually acceptable and two additional arbitrators designated as alternates (one construction lawyer and one industry professional) in the event that one of the selected arbitrators becomes unavailable. If the parties are unable to agree on the necessary number of arbitrators from the original list, then the parties shall jointly ask the AAA for a further list of 25 additional approved construction arbitrators who best meet the criteria set forth below and who are the next closest geographically to the Southfield office of AAA. Priority shall be given to proximity first and to the remaining criteria second without regard to priority of the remaining criteria. The 100 mile limitation set out in Section 1.3.3 below shall not apply to this selection. If the parties fail to select a panel of three arbitrators and two alternate arbitrators within thirty days of the date of service of the second list of potential arbitrators, then the remaining positions will be filled by arbitrators selected through the normal process of the AAA, Construction Industry Rules, subject to the following parameters:

§ 1.3.1   (Applicable only if the parties fail to agree on arbitrator(s)). No arbitrator shall be selected who was already rejected by one of the parties. A list of arbitrators that were rejected in initial discussions will be provided by each party within ten (10) days of a request by the AAA.

§ 1.3.2   (Applicable only if the parties fail to agree on arbitrator(s)) In addition to any other grounds on which a prospective arbitrator would be disqualified under the AAA Rules to protect against arbitrator bias or conflicts of interest, no arbitrator shall be selected who has any connection, relationship to or interest in any of the parties, any consultant, attorney, employee, subcontractor, or witness of the parties. The parties shall provide a list of all such persons or entities within ten (10) days of a request by the AAA.

§ 1.3.3   (Applicable only if the parties fail to agree on arbitrator(s)). No arbitrator will be selected by the AAA who resides within 100 miles of the offices of either party, including field offices as well as the Florida office or any other subsidiary office of Ric-Man. The parties will provide a list of all such addresses within ten (10) days of a request from the AAA.

§ 1.3.4   Any selected arbitrator will be a member of the AAA Construction Panel. The arbitration panel shall include one construction lawyer and two construction professionals agreed upon by the parties or selected in accordance with the criteria set out below. If any arbitrators are selected by AAA, selection criteria shall be applied in the following order with the next level of criteria applied only if no candidates are available who meet the preceding criteria:

1.3.4.1 Construction Lawyer (1 member and 1 alternate)

A Member of the Large Complex Construction Dispute ("LCCD") panel and at least 20 years of experience in construction law with an emphasis in heavy construction,

At least 20 years of experience in construction law with an emphasis in heavy construction,

A member of the LCCD panel and at least 10 years of experience with an emphasis in heavy Construction.

At least 10 years of experience with an emphasis in heavy Construction.

## APPENDIX

A member of the LCCD' panel and at least 20 years of experience in construction law with some experience in heavy construction.

At least 20 years of experience in construction law with some experience in heavy construction.

A member of the LCCD panel and at least 10 years of experience with some experience in heavy construction

At least 10 years of experience with some experience in heavy construction.

1.3.4.2 Construction Industry Professionals (2 members and 1 alternate).

A member of the LCCD panel and an advanced Civil Engineering Degree with at least 20 years of geotechnical experience emphasizing soils, soil loadings, dewatering, and structural steel design and loading.

An advanced Civil Engineering Degree with at least 20 years of geotechnical experience emphasizing soils, soil loadings, dewatering, and structural steel design and loading.

A member of the LCCD panel and an advanced Civil Engineering Degree with at least 10 years of geotechnical experience emphasizing soils, soil loadings, dewatering, and structural steel design and loading.

An advanced Civil Engineering Degree with at least 10 years of geotechnical experience emphasizing soils, soil loadings, dewatering, and structural steel design and loading.

A member of the LCCD panel and a Civil Engineering degree with at least 20 years of geotechnical experience emphasizing soils, soil loading, dewatering, and structural steel design and/or loading.

A Civil Engineering degree with at least 20 years of geotechnical experience emphasizing soils, soil loading, dewatering, and structural steel design and/or loading.

A member of the LCCD panel and a Civil Engineering degree with at least 10 years of geotechnical experience emphasizing soils, soil loading, dewatering, and structural steel design and/or loading.

A Civil Engineering degree with at least 10 years of geotechnical experience emphasizing soils, soil loading, dewatering, and structural steel design and/or loading,

## APPENDIX

A member of the LCCD panel and any Engineering degree with at least 20 years of geotechnical experience emphasizing soils, soil loading, dewatering, and structural steel design and/or loading.

Any Engineering degree with at least 20 years of geotechnical experience emphasizing soils, soil loading, dewatering, and structural steel design and/or loading.

A member of the LCCD panel and any Engineering degree with at least 10 years of geotechnical experience emphasizing soils, soil loading, dewatering, and structural steel design and/or loading.

Any Engineering degree with at least 10 years of geotechnical experience emphasizing soils, soil loading, dewatering, and structural steel design and/or loading.

A member of the LCCD panel and at least 20 years of geological or geotechnical experience in construction management or design emphasizing soils, soil loadings, dewatering, and structural steel design and/or loading.

At least 20 years of geological or geotechnical experience in construction management or design emphasizing soils, soil loadings, dewatering, and structural steel design and/or loading.

A member of the LCCD panel and at least 10 years of geological or geotechnical experience in construction management or design emphasizing soils, soil loadings, dewatering, and structural steel design and/or loading.

At least 10 years of geological or geotechnical experience in construction management or design emphasizing soils, soil loadings, dewatering, and structural steel design and/or loading.

§ 1.3  DISCOVERY.  All discovery permitted by the Michigan State Rules of Court shall also be permitted in the arbitration process under this Agreement, subject to each party's right to seek a protective order if discovery becomes harassing or abusive.   The AAA Construction Industry Rules' limitation on discovery shall not apply.  The arbitration panel is hereby authorized to decide any and all discovery disputes and issue appropriate sanctions where warranted.  The arbitration panel may resolve discovery disputes through any procedure deemed prudent by the arbitrators, including through a conference call or a formal motion and hearing.

Notwithstanding the foregoing, the arbitration panel may limit discovery where the panel finds that the discovery sought serves no purpose other than to increase the expense of the arbitration or to harass the other party.

§ 1.5  VACANCIES AND REPLACEMENT OF ARBITRATORS
In the event that an arbitrator on the panel becomes unable to continue to serve as an arbitrator while arbitration is pending, the arbitration hearings shall be temporarily suspended

## APPENDIX

until the alternate/replacement arbitrator is prepared to proceed with the hearings. The alternate arbitrator(s) shall review the transcripts and evidence from hearings previously conducted in the matter and shall then replace the absent arbitrator on the panel. If additional arbitrators become unable to continue to serve as arbitrators on the panel, then the parties shall agree upon a replacement arbitrator within ten days of the date that the hearings are suspended or if the parties are unable to agree, the AAA shall select a replacement arbitrator, subject to the parameters set out above. The makeup of the arbitration panel (one construction lawyer and two industry professionals) shall be maintained.

§ 1.6　FORM AND FINALITY OF AWARD. The arbitration award shall be a standard award. However, the parties also desire a determination of the general basis of the award, and distribution of amounts awarded and offset or deducted based on the general issues, to allow an assessment of the potential culpability of or recovery by third parties including subcontractors, consultants, or suppliers. Therefore the parties request that the panel provide a breakdown of the amount of any final award that identifies the basis for the amount and sets out the general issues that constitute the basis for each dollar amount added to or deducted from the amount of the award. Such determination shall not be considered for purposes of appeal or review of the award. In the event of such a review on appeal, the special determination shall not be admissible nor considered by the reviewing entity. The arbitration proceedings shall be recorded by a certified court reporter selected by agreement of the parties and, if they are unable to agree, then by the AAA. The parties shall share the cost of the reporter equally. The award rendered by the arbitration panel shall be final, binding, and judgment may be entered upon it in accordance with applicable law at any court having competent jurisdiction thereof.

EXECUTION, REPRESENTATIONS AND WARRANTIES.

§ 2.1　This Agreement shall bind the parties hereto and their heirs, assigns, subsidiaries, parent companies, creditors, representatives, or beneficiaries.

§ 2.2　The individuals executing this Agreement hereby warrant they have authority to sign this Agreement on behalf of their respective entity and to bind that entity to the terms of this Agreement.

§ 2.3　This Agreement shall amend, and to the extent of any conflict, supersede the terms and conditions of Contract 1 and Contract 2 defined above.

## APPENDIX

§2.4   The parties, by and through their authorized representatives hereby agree to the terms of this agreement.

OAKLAND-MACOMB INTERCEPTOR
DRAINAGE DISTRICT

By: _____

Its: _____SECRETARY_____

Date: ____4-14-2011____

RIC-MAN CONSTRUCTION, INC.

By: _____STEVEN MANCINI_____

Its: _____PRESIDENT_____

Dated: ____4-12-11____

Approved as to form and content:

KOTZ, SANGSTER, WYSOCKI AND BERG, P.C.

By: Jeffrey M. Sangster (P30791)
Attorneys for OMIDDD
400 Renaissance Center, Suite 3400
Detroit, MI 48243
(313) 259-8300
jsangster@kotzsangster.com

BROOKS WILKINS SHARKEY & TURCO, PLLC

By: _____

Michael R. Turco (P48705)
Attorneys for Ric-Man
401 S. Old Woodward Avenue, Suite 460
Birmingham, Michigan 48009
(248) 971-1800
turco@bwst-law.com