*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

---

SAMANTHA LICHON,

        Plaintiff-Appellant,

v

MICHAEL MORSE, and MICHAEL J. MORSE, PC,

        Defendant-Appellees.

FOR PUBLICATION
March 14, 2019

No. 339972
Oakland Circuit Court
LC No. 17-158919-CZ

---

JORDAN SMITS,

        Plaintiff-Appellant,

v

MICHAEL MORSE,

        Defendant-Appellee.

No. 340513
Wayne Circuit Court
LC No. 17-011128-CZ

---

JORDAN SMITS,

        Plaintiff-Appellant,

v

MICHAEL MORSE, and MICHAEL J. MORSE, PC,

        Defendant-Appellees.

No. 341082
Wayne Circuit Court
LC No. 17-008068-CZ

---

Before: JANSEN, P.J., and BECKERING and O'BRIEN, JJ.

-1-

O'BRIEN, J. (*dissenting*).

The parties agreed to arbitrate "any claim against another employee" for "discriminatory conduct." Based on this language, I would hold that plaintiffs' claims arguably fall within the scope of the arbitration agreement, and therefore I respectfully dissent.

In Docket No. 341082, Smits' complaint alleged that defendant Michael Morse (Morse) approached Smits from behind at a company party and intentionally "groped [her] breasts without . . . permission" for purposes of sexual gratification. In Docket No. 339972, Lichon's complaint alleged in pertinent part that Morse, "on multiple occasions," approached her "from behind, groped her breasts, and touched his groin to her rear while audibly stating sexual comments[.]" The complaint also alleged that Morse "stated sexually motivated comments" to Lichon, and that he "made intentional and unlawful threats to physically and inappropriately touch [Lichon's] body in a sexual manner . . . ." Plaintiffs, individually, filed claims against Morse and defendant Michael J. Morse, PC (the Morse Firm) as described by the majority. Both complaints included claims for sex discrimination under the Elliot Larsen Civil Rights Act (ELCRA), MCL 37.2101 *et seq.*, and sexual assault and battery against Morse.

Both Smits and Lichon signed an arbitration agreement—the Mandatory Dispute Resolution Procedure Agreement (MDRPA)—with the Morse Firm, which states in pertinent part:

> This Mandatory Dispute Resolution Procedure shall apply to all concerns you have over the application or interpretation of the Firm's Policies and Procedures relative to your employment, including, but not limited to, any disagreements regarding discipline, termination, discrimination or violation of other state or federal employment or labor laws. This includes any claim over the denial of hire. This Procedure includes any claim against another employee of the Firm for violation of the Firm's Policies, discriminatory conduct or violation of other state or federal employment or labor laws. Similarly, should the Firm have any claims against you arising out of the employment relationship, the Firm also agrees to submit them to final and binding arbitration pursuant to this Procedure.

The trial courts ruled that, based on this language, Smits and Lichon agreed to arbitrate their claims. The question on appeal is whether those decisions were proper.

"Arbitration is a matter of contract." *Altobelli v Hartmann*, 499 Mich 284, 295; 884 NW2d 537 (2016). The interpretation of contractual language is reviewed de novo. *VHS Huron Valley Sinai Hosp v Sentinel Ins Co*, 322 Mich App 707, 715; 916 NW2d 218 (2018).

"Michigan jurisprudence favors arbitration, and the employment context is no exception." *Rembert v Ryan's Family Steak Houses, Inc*, 235 Mich App 118, 130; 596 NW2d 208 (1999). The parties' agreement determines the scope of the arbitration. *Rooyakker & Sitz, PLLC v Plante & Moran, PLLC*, 276 Mich App 146, 163; 742 NW2d 409 (2007). As explained by this Court:

> To ascertain the arbitrability of an issue, [a] court must consider whether there is an arbitration provision in the parties' contract, whether the disputed issue is

-2-

arguably within the arbitration clause, and whether the dispute is expressly exempt from arbitration by the terms of the contract. The court should resolve all conflicts in favor of arbitration. However, a court should not interpret a contract's language beyond determining whether arbitration applies and should not allow the parties to divide their disputes between the court and an arbitrator. Dispute bifurcation defeats the efficiency of arbitration and considerably undermines its value as an acceptable alternative to litigation. [*Id.* (quotation marks and citations omitted).]

There is no dispute about the existence of the arbitration agreement, nor do the parties contend that the issues to be arbitrated are exempted by the terms of the agreement. The only issue is whether the claims to be arbitrated—which include claims that plaintiffs were sexually assaulted at the hands of their superior—are arguably within the scope of the parties' arbitration agreement.

The majority concludes that we must decide "whether the sexual assault and battery of an employee at the hands of a superior is conduct related to employment." If that were the question before this Court, I would agree that sexual assault is not conduct related to employment. But I would more broadly frame the question before us as whether plaintiffs' claims arguably fall within the scope of the arbitration agreement.

Arbitration agreements are treated as ordinary contracts, and so we apply general principles of contract to their interpretation. *Oakland-Macomb Interceptor Drain Drainage Dist v Ric-Man Constr, Inc*, 304 Mich App 46, 55-56; 850 NW2d 498 (2014). Unambiguous contracts are not open to interpretation and must be enforced as written. *Rory v Continental Ins Co*, 473 Mich 457, 468; 703 NW2d 23 (2005).

The majority focuses on the phrase "relative to your employment" in the first sentence of the MDRPA. In so doing, I believe that the majority overlooks other portions of the contract that explain what claims the parties intended—and therefore arguably agreed—to arbitrate. Most relevant here, the parties agreed to arbitrate "any claim against another employee of the Firm for violation of the Firm's Policies, discriminatory conduct or violation of other state or federal employment or labor laws." Thus, the parties unambiguously agreed to arbitrate "any claim against another employee of the Firm for . . . discriminatory conduct."

Under the ELCRA—which both plaintiffs filed claims under—"[d]iscrimination because of sex includes sexual harassment." MCL 37.2103(i). The ELCRA has a broad definition for conduct constituting sexual harassment:

Sexual harassment means unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct or communication of a sexual nature under the following conditions:

(*i*) Submission to the conduct or communication is made a term or condition either explicitly or implicitly to obtain employment, public accommodations or public services, education, or housing.

(*ii*) Submission to or rejection of the conduct or communication by an individual is used as a factor in decisions affecting the individual's employment, public accommodations or public services, education, or housing.

(*iii*) The conduct or communication has the purpose or effect of substantially interfering with an individual's employment, public accommodations or public services, education, or housing, or creating an intimidating, hostile, or offensive employment, public accommodations, public services, educational, or housing environment.  [MCL 37.2103(i).]

Based on this definition, sexual assault is sexual harassment.[1]  See *Radtke v Everett*, 442 Mich 368, 394-395; 501 NW2d 155 (1993) (acknowledging that sexual assault is a form of sexual harassment that can form the basis for a claim for sex discrimination under the ELCRA).

_____

[1] I base my reasoning solely on the language in the parties' agreement.  I believe that the majority highlights an interesting, yet potentially problematic, national trend.  When courts label an instance of "sexual harassment" as "sexual assault," they generally find that the conduct is unrelated to employment.  See the cases listed in footnote 1 of the majority opinion.  But see *Barker v Halliburton Co*, 541 F Supp 2d 879, 889 (SD Tex, 2008) (holding that the parties agreed to arbitrate the plaintiff's claim of sexual assault where the parties agreed to arbitrate all claims "related to . . . employment").  Yet when courts use the term "sexual harassment," they generally find that the conduct *is* related to employment.  See *Lyster v Ryan's Family Steak Houses, Inc*, 239 F3d 943, 946-94747 (CA 8, 2001) (holding that the plaintiff agreed to arbitrate her "claim of sexual harassment . . . which arose during [the plaintiff's] employment with [defendant]" based on her agreement to arbitrate "any and all employment-related disputes"); *Cruise v Kroger Co*, 233 Cal App 4th 390, 397 (2015) (holding that the plaintiff's claims "for retaliation, sexual harassment, sexual and racial discrimination, failure to investigate and prevent harassment and retaliation, as well as her common law claims for wrongful termination in violation of public policy, intentional infliction of emotional distress and defamation, are all 'employment-related disputes' within the meaning of the above arbitration clause, and therefore clearly are covered disputes subject to the arbitration agreement"); *Kindred v Second Judicial Dist Court*, 116 Nev 405, 411 (2000) (holding that the plaintiff agreed to arbitrate her sexual harassment claim based on language in the agreement that "any controversy or dispute arising between [the plaintiff] and [the defendant] in any respect to this agreement or your employment by [the defendant] shall be submitted for arbitration"); *Freeman v Minolta Bus Sys, Inc*, 699 So 2d 1182, 1187 (La Ct App, 1997) (holding that the plaintiff's sexual harassment claim "involve[d] violation of a term or condition of her employment" and therefore was "included in the scope of the arbitration clause of her employment contract"); *Arakawa v Japan Network Group*, 56 F Supp 2d 349, 353 (SDNY, 1999) ("All of [the plaintiff's] claims—sexual harassment, wrongful discharge and discrimination—arise out of or relate to her employment and are therefore claims that are subject to binding arbitration pursuant to the agreement.").  While it is clear from the majority's holding that sexual assault is conduct unrelated to employment, it is unclear whether the majority is bucking the national trend and holding that *all* sexual harassment is conduct unrelated to employment.

And sexual harassment is, under the ELCRA, discrimination because of sex. MCL 37.2103(i). The parties agreed to arbitrate any claim for discriminatory conduct against another employee. Thus, based on the unambiguous language in the parties' arbitration agreement, I believe that plaintiffs' claims arguably fall within the scope of the agreement.

Although I do not believe that an employee should be required to arbitrate allegations of sexual assault, I am constrained by the law and the terms of the employment contract to dissent in this case. I believe that our Legislature is the appropriate forum for addressing this policy matter. See *Gilmer v Interstate/Johnson Lane Corp*, 500 US 20, 26; 111 S Ct 1647; 114 L Ed 2d 26 (1991) ("[h]aving made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue") (quotation marks and citation omitted; alteration in *Gilmer*).[2]

For these reasons, I respectfully dissent.

/s/ Colleen A. O'Brien

---

[2] I offer no opinion on the majority's policy reasoning, though it appears to run counter to this Court's extensive reasoning in *Rembert*, 235 Mich App at 135-159, for why civil rights claims in general are arbitrable. Among other things, the *Rembert* Court acknowledged arguments that "the public policy advanced by [civil rights] statutes would be undermined if these disputes were addressed in the relatively private forum of arbitration," but rejected those arguments in part because they "were thoroughly considered and rejected by the United States Supreme Court in a trio of cases known as the *Mitsubishi* trilogy and, later, in *Gilmer*[, 500 US 20]." *Id*. at 135 (footnote omitted).